ROBERT W. KLEIN AND JOY H. KLEIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Klein v. Commissioner
Docket No. 2357-76.
United States Tax Court
T.C. Memo 1978-275; 1978 Tax Ct. Memo LEXIS 242; 37 T.C.M. (CCH) 1176; T.C.M. (RIA) 78275; July 24, 1978, Filed *242 Petitioner purchased 1,000 shares of stock in margin account with a brokerage firm. A trustee was appointed under the Securities Investor Protection Act of 1970 to liquidate the brokerage firm. The trustee found that there were insufficient shares of American Training Services, Inc., stock held by or for the account of the brokerage firm to meet its obligations to its margin accounts. Whereupon, the trustee paid the petitioner the equivalent of the fair market value of 1,000 shares of the stock. Held, the resulting loss sustained by petitioner was attributable to a decline in the value of the stock, and not to any defalcation on the part of the broker. The loss resulted from the sale of a capital asset subject to the limitations of sec. 1211, I.R.C.1954. *243 Alvin H. Frankel, for the petitioners. Howard W. Gordon and Edward I. Foster, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined a deficiency in petitioners' income tax for the taxable year 1973 in the amount of $ 3,680.87.The only question presented for decision is whether petitioners incurred a casualty loss under section 165(c) [1] in 1973 on account of the purchase of 1,000 shares of American Training Services, Inc., through Weis, Voisin and Company, Inc.
FINDINGS OF FACT Robert W. Klein and Joy H. Klein are husband and wife and resided in Cinnaminson, New Jersey, when their petition was filed in this case. Joy H. Klein is a petitioner only because they filed a joint return for the calendar year 1973. Robert W. Klein will hereinafter be referred to as petitioner. On January 22, 1973, petitioner opened a margin account at Weis, Voisin and Company, Inc., as a result of the solicitation of Mr. Julius Rothlander, a stockbroker employed by that company. On the recommendation of Mr. Rothlander, *244 petitioner agreed to or acquiesced in the purchase for his account of 1,000 shares of American Training Services, Inc., on the dates and for the amounts set forth below: Date
Shares
Amount Paid
1/29/73
100
$ 2,634.16
1/29/73
400
10,736.64
2/6/73
100
2,455.86
2/13/73
200
4,675.40
2/14/73
100
2,375.48
2/14/73
100
2,362.98
TOTAL
$ 25,240.52
Said purchases were made under what is known as a "margin account," pursuant to which the brokerage firm had the authority to pledge the stocks purchased by petitioner and to sell such stocks without notice by reason of an insufficiency of margin or otherwise. As of February 23, 1973, petitioner was indebted to the brokerage company in the amount of $ 19,558.53 in his margin account. As of May 24, 1973, such indebtedness amounted to $ 19,021.61. The records of the account as reported to the petitioner also showed that petitioner was "long" 1,000 shares of American Training Services, Inc.
On May 24, 1973, the Securities Investor Protection Corporation petitioned the United States District Court for the Southern District of New York, pursuant to the provisions of the Securities Investor Protection *245 Act of 1970, for the appointment of a trustee and liquidation of Weis, Voisin and Company, Inc.
On May 30, 1973, a trustee was appointed for the liquidation of the brokerage firm. When the trustee took over, he discovered that the brokerage firm did not own sufficient shares of American Training Services, Inc., to distribute such shares in kind to its customers. Petitioner was so advised. On or about August 10, 1973, the trustee transmitted to petitioner a check in the amount of $ 8,875.00, being the fair market value of 1,000 shares of American Training Services, Inc., as of May 24, 1973. Petitioner claims that the resulting loss sustained on the purchase of 1,000 shares of American Services, Inc., is deductible as a casualty or a theft loss under section 165(c). Respondent determined that petitioner sustained a short-term capital loss on the sale of such shares. OPINION The petitioner contends that the financial condition of Weis, Voisin and Company, Inc., was misrepresented to him at the time he opened his account. Therefore, he argues the funds for the purchase of securities were obtained through fraud or misrepresentation and the resulting loss constitutes a "theft" *246 loss within the meaning of the statute. We disagree When it became apparent that Weis, Voisin and Company, Inc., could not meet its obligations, the Securities Investor Protection Corporation moved in. [2] Its purpose was to indemnify the clients of Weis, Voisin and Company, Inc., from any loss on account of the inability of that firm to meet its obligations. Petitioner was thereupon assured that he would receive the 1,000 shares of American Training Services, Inc., in kind or its equivalent. Lacking the requisite shares, the trustees paid the petitioner the fair market value of such shares. The loss sustained by petitioner did not result from any fraud on the part of Weis, Voisin and Company, Inc., or even from any failure by that firm to account to its customers for the stocks purchased in their names. The Securities Investor Protection *247 Corporation protected the customers of the firm from any such loss. The loss sustained by petitioner resulted, not from the default of the brokerage firm, but from a decline of the fair market value of the shares which had been purchased for petitioner's account. It was not a "theft loss" within the meaning of section 165(c). Bellis v. Commissioner,540 F.2d 448 (9th Cir. 1976); Paine v. Commissioner,63 T.C. 736 (1975), affd. 523 F.2d 1053 (5th Cir. 1975); Edwards v. Bromberg,232 F.2d 107 (5th Cir. 1956). The parties have stipulated that Weis, Voisin and Company, Inc., purchased 1,000 shares of American Training Services, Inc., for the account of the petitioner. Since this was a margin account, when the trustee took control of the brokerage firm it was not possible to identify any specific shares or certificates as belonging to petitioner. In fact, the stock could have been pledged with a third party to secure the obligations of the broker. In accounting to the petitioner, the trustee elected to reimburse petitioner for the fair market value of his shares as of the date that the trustee took possession of the *248 property of the brokerage firm. It does not appear that the petitioner could have elected to receive his property in kind. The payment received in lieu thereof was intended to compensate petitioner for his loss on account of a deficiency in the number of shares held by the brokerage firm. Whether regarded as damages for the conversion of the shares or as an involuntary sale, the resulting loss would be deemed a loss from the sale or exchange of property by the petitioner. Megargel v. Commissioner,3 T.C. 238 (1944); Hawaiian Gas Products v. Commissioner,126 F.2d 4 (9th Cir. 1942). Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩
2. Securities Investor Protection Corporation was created to implement the Securities Investor Protection Act of 1970, 15 U.S.C.A. sec. 78aaa (1970). The Act was designed to protect customers of broker-dealers falling into financial difficulty. Lohf v. Casey,466 F.2d 618↩ (10th Cir. 1972).