MANOUCHEHR MOZAYENY AND SHIRIN MOZAYENY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mozayeny v. Commissioner
Docket No. 32423-83.
United States Tax Court
T.C. Memo 1987-188; 1987 Tax Ct. Memo LEXIS 184; 53 T.C.M. (CCH) 566; T.C.M. (RIA) 87188; April 9, 1987. Allen C. Clarke, for the petitioners. Carolyn R. Bechman, for the respondent. BUCKLEY
MEMORANDUM FINDINGS OF FACT AND OPINION BUCKLEY, Special Trial Judge: This case was heard pursuant to the provisions of section 7456(d)(3) of the Code (redesignated sec. 7443A(b)(3) by sec. 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755) and Rules 180, 181 and 182. [1]
Respondent determined a deficiency in petitioners' 1980 Federal income tax in the amount of $8,556. Respondent audited petitioners' 1979 and 1980 Federal income tax returns and made substantial adjustments in each year. The adjustments made to petitioners' 1979 return did not result in a deficiency for *186 that year. However, some of the items disallowed had an impact on petitioners' 1980 taxes because of loss carryforwards. The issues for decision, all of which relate to 1979, are whether petitioners incurred a casualty loss through the destruction of their automobile in Iran; whether petitioners incurred a casualty loss through the confiscation of real and personal property in Iran; [2] whether petitioners have substantiated costs of moving from Iran to the United States; and whether petitioners are entitled to a deduction for repair costs for rental real property in New York. Each of these items, if allowable, will affect petitioners' claimed net operating loss deduction of $21,685 for 1980 which was disallowed by respondent. FINDINGS OF FACT Some of the facts were stipulated and are incorporated herein by reference. Petitioners were residents of La Habra, California, when they timely filed their petition herein. Petitioner Manouchehr (hereafter petitioner) became a naturalized citizen of the United *187 States in 1975. He is, and was at all relevant times, an obstetrician-gynecologist. He was asked by the government of Iran to start a pilot-project on medical planning in Iran, and in this connection he, his wife and their children returned to Iran in April or May 1976. Preparatory to his return to Iran in November 1975 petitioner purchased a 1976 model Mercury Marquis at a purchase price of $5,850. He then paid $2,700 to ship the automobile to Iran in June 1976. Petitioner testified that he paid customs duties to Iran of $18,000. [3] During the Iranian revolution, the automobile was burnt to the ground and was a total loss. Petitioner did not have automobile insurance despite the fact he believed the automobile to be worth about $30,000 in Iran. By amendment to his *188 petition, petitioner claimed he was entitled to an additional casualty loss in 1979 as the result of the confiscation of his home in Iran by the revolutionary government. Petitioner's testimony was that he owned a home in Iran near the Caspian Sea, for which he paid approximately $70,000, and that it was worth $140,000 to $150,000 at the time he left Iran. He also testified that he lost personal property of a value of $5,000 to $6,000 for which he claims deductions. Petitioner had no documentation to prove his ownership or even the existence of the house. He testified that relatives could testify about the house (as well as the customs duties). However, he failed to call them as witnesses. Petitioners owned a rental property in Newburgh, New York. During 1979 they deducted $4,661 for repairs and maintenance, all of which was disallowed for lack of substantiation. Petitioners paid $353.12 in 1980 for cleaning the property, the deduction for which they claimed for 1979. Also, they paid $3,000 to replace and reinforce a concrete garage floor and blacktop in front of the garage. They also paid $1,335 for repairing and replacing beams in the attic of the property and installing *189 a support girder in the crawl space. Petitioner left Iran in haste in April 1979. He had previously sent his wife and children back to the United States. He could not come directly to the United States because he did not care to display his United States passport. He left the country with an Iranian passport and a visa which enabled him to go to Paris. After a couple of days in Paris he returned to New York and then arrived in southern California in June 1979. He testified that his total cost of this move was $4,500, but provided no supporting documentation. OPINION Automobile Casualty Loss
Petitioners contend that they suffered a casualty loss of $23,950 from the burning of their automobile measured by the original cost of $5,850, less depreciation taken of $2,600, plus shipping cost to Iran of $2,700 and customs duties in Iran of $18,000. Accordingly, after deducting the $100 floor, they claimed a loss of $23,850 on their 1979 return. Respondent contends that petitioners have failed to show (1) that a loss occurred; (2) that it was not compensated for by insurance; (3) that shipping costs and customs duties should be added to the cost basis of the automobile; and *190 (4) the amounts of the cost basis, customs duties and shipping costs. Petitioners purchased the automobile in November 1975 for $5,850 and used it until they departed for Iran in April or May 1976. The $2,700 cost of shipping the automobile to Iran is not properly a part of the basis of the automobile. It is a personal expenditure by petitioners so they would have the use of the automobile in Iran. We hold that the same result applies to the customs duties paid by petitioner in Iran. We have no doubt that petitioner paid some customs duties but are unable to find the amount due to the confusion in petitioner's testimony. In any event, whatever the amount it is not includible in petitioners' adjusted basis for the property. Section 1016 provides that an adjustment to the basis of property shall be made for expenditures properly chargeable to capital account. The cost of shipping the car to Teheran was a personal family living expense and not a part of the cost of the car for Federal income tax purposes. Klippel v. Commissioner,T.C. Memo. 1964-188. The same holds *191 true for the customs duties. Thus, petitioners' adjusted basis in the automobile was $3,250, the original cost less depreciation allowed. The fair market value of the automobile in Iran immediately prior to its destruction was greater than its adjusted basis. We carefully considered petitioner's testimony in regard to the destruction of his automobile and believe it to be true. Section 165(c)(3) provides for a deduction for losses "from fire, storm, shipwreck, or other casualty." Petitioners had no insurance or other source of reimbursement for the automobile. Petitioners' loss was from fire and it is deductible to the extent of petitioners' adjusted basis of $3,250, less the $100 limitation of section 165(c)(3). Casualty Loss -- Real Property and Personal Property
Petitioners bear the burden of proving their entitlement to a casualty loss deduction for the alleged loss through confiscation of real and personal property in Iran. Welch v. Helvering,290 U.S. 111 (1933). *192 Richter v. Commissioner,T.C. Memo. 1965-88. They have failed entirely to prove they owned such property, and they have failed to prove their basis therein. In any event, even had they met their burden of proof, we would nevertheless not allow the deduction as a matter of law. We have held, in a somewhat similar situation, that the seizure of a taxpayer's personal automobile by officials in East Germany is not deductible under section 165(c)(3) as a "casualty." Powers v. Commissioner,36 T.C. 1191 (1961). Such a loss did not embody the requisite element of "chance, accident or contingency." Here, too, we must hold that such a loss, though unfortunate, was no more than a personal expense to petitioners and, as such, nondeductible. See Farcasanu v. Commissioner,50 T.C. 881 (1968), affd. per curiam 436 F.2d 146 (D.C. Cir. 1970). Unlike the situation we considered in Benichou v. Commissioner,T.C. Memo. 1970-263, no contention whatsoever has been made in this case that petitioners held the property for trade *193 or business purposes. Moving Expense
Petitioners claimed a deduction of $4,500 in connection with their move from Iran to the United States. Section 217 allows the deduction of moving expenses in connection with the commencement of work by the taxpayer at a new principal place of work. Among the conditions for the allowance of the deduction, the taxpayer must be a full-time employee or provider of services for certain specified periods. Sec. 217(c). Petitioners have had a total failure of proof in regard to the moving expense deduction. The only fact they managed to prove was that they moved from Iran to southern California. They failed to substantiate any of the costs of such move, as to either amount or year of payment. They failed to prove the new principal place of work, the time of arrival at such place, that petitioner was a full-time employee or performer of services on a full-time basis and that he remained in such status for the requisite periods set forth in section 217(c). Accordingly, we must hold for respondent on this issue. Repair Expense Deductions
Petitioners *194 have shown they expended $353.12 for cleaning their New York rental property. They claimed this deduction for 1979 but the statement which they introduced into evidence makes it apparent that the payment was made in 1980. They are entitled to this deduction in 1980. Petitioners also incurred other costs which they deducted as repairs: $3,000 to replace and reinforce a concrete garage floor and to blacktop in front of the garage, and $1,335 for reinforcing and replacing attic beams and installing a support girder in the crawl space. Respondent contends, correctly, that these are capital expenditures. Section 263(a)(1) provides, as a general rule, that no deduction shall be allowed for permanent improvements or betterments made to increase the value of any property or estate. Section 1.263(a)-1(b), Income Tax Regs., provides that capital expenditures include "amounts paid or incurred (1) to add to the value, or substantially prolong the useful life, of property owned by the taxpayer." It is readily apparent that these expenditures were permanent improvements *195 to the property, of a useful life greater than one year. These expenditures were not for incidental repairs and they are not deductible. See Allen v. Commissioner,T.C. Memo. 1956-88. Medical Expenses
There will be a computational adjustment to the medical expenses claimed on the return as a result of our opinion herein. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners raise the issue of the real estate and personal property confiscation loss through an amended petition. This item was not claimed on their return for 1979.↩
3. Petitioner's testimony was vague and confused in this regard. He testified that the Iranian customs duty was 500 percent of the cost of the automobile plus the shipping costs, $8,550. However, he also testified that the customs duties were $18,000 or 2.1 times such costs. We do not make findings of fact in regard to the amount of the customs duties as they are unnecessary to our decision in this matter.↩