T.C. Memo. 1996-422


UNITED STATES TAX COURT


AHSAN MOHIUDDIN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 14274-94, 23021-94.     Filed September 18, 1996.


Ahsan Mohiuddin, pro se.

Charles Pillitteri and Robert W. West, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SCOTT, Judge:  Respondent determined deficiencies in petitioner's Federal income taxes and accuracy-related penalties for the calendar years 1990, 1991, and 1992 as follows:

| Year | Deficiency | Accuracy-related penalty Sec. 6662(a)[1] |
|------|-----------|------------------------------------------|
| 1990 | $658 | $124 |
| 1991 | 17,246 | 3,449 |
| 1992 | 1,517 | 303 |

Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for decision: (1) Whether petitioner is entitled to use the filing status of "head of household" for the taxable years 1990 and 1991, and whether petitioner is entitled to use the filing status of "single" for the taxable year 1992; (2) whether petitioner is entitled to a dependency exemption for his mother for each of the taxable years 1990 and 1991; (3) whether petitioner is entitled to deduct on Schedule A the amounts of $5,539, $37,247.73, and $7,823, or any part thereof, for the taxable years 1990, 1991, and 1992, respectively; (4) whether petitioner is entitled to Schedule C business expense deductions in the amounts of $23,505 and $7,250 for the taxable years 1991 and 1992, respectively; and (5) whether petitioner is liable for an accuracy-related penalty pursuant to section 6662(a) for each of the taxable years at issue.[2]

---

[1] All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2] In her Answer to Amended Petition, respondent alleged that petitioner was liable for an addition to tax pursuant to sec. 6651(a) for failure to timely file petitioner's Federal income tax return for the taxable year 1990. In her trial

(continued...)

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

At the time of the filing of the petition in this case, petitioner maintained a legal residence in Huntsville, Alabama. Petitioner filed his Federal income tax returns for the taxable years 1990, 1991, and 1992, with the Internal Revenue Service Center in Memphis, Tennessee.

Petitioner was married at all times during the taxable years at issue. Although petitioner and his wife had lived apart for some years, they are not and never have been divorced. Petitioner did not maintain as his home a household that constituted the principal place of abode of an individual who was a son, stepson, daughter, or stepdaughter of petitioner during any part of any of the year 1990, 1991 or 1992.

In 1986, petitioner's mother and father immigrated from India to the U.S. At that time, petitioner's mother received a resident alien card. In the fall of 1989, petitioner's mother and father applied for Government-assisted housing and were furnished a subsidized-rent duplex in Huntsville, Alabama, in which to live.

In October 1990, petitioner's mother began receiving supplemental income payments from the Social Security

---

[2](...continued)
memorandum, respondent conceded this issue.

Administration. For October and November 1990, she received $193 per month in such payments. Beginning in December 1990, she received $289.50 per month as supplemental income payments from the Social Security Administration. Petitioner's father began receiving assistance from the Government in the middle of 1989. Petitioner's father received supplemental income payments from the Social Security Administration in October and November 1990 in the amount of $386 per month. Beginning in December 1990, he received $289.50 per month as such payments.

In November 1989, petitioner's sister and her husband moved into petitioner's house at 415 Karter Street, Huntsville, Alabama (the Karter Street house), and lived there throughout 1990 and 1991. Petitioner's mother lived for at least part of each of the years 1990 and 1991 in the Karter Street house. Petitioner's sister and her husband took care of petitioner's mother while she lived in the Karter Street house. In late 1991 or early 1992, petitioner's sister and her husband moved to Little Rock, Arkansas, and petitioner's mother moved with them.

Petitioner was unemployed during 1990 until November when he obtained employment in Melbourne, Florida, with Avionics Research Corp. of Florida (Avionics). Petitioner moved to Florida in November 1990 and lived there throughout 1991. Petitioner worked for Avionics from November 1990 until October 1991, when his employment was terminated. Petitioner remained in Florida,

receiving unemployment compensation, until June 1992, when he was no longer eligible to receive unemployment compensation.

Beginning in November 1989, petitioner rented the Karter Street house with an option to buy. In 1990, petitioner decided to exercise his option to buy, and between November 1990 and February 1991, petitioner paid the owner of the Karter Street house $10,000, which amount represented the owner's equity in the house. In February 1991, petitioner assumed the mortgage with AmSouth Mortgage Co. (AmSouth), which was on the Karter Street house, and began making mortgage payments to AmSouth.

In June 1992, petitioner moved back to Huntsville. In August 1992, he obtained employment in Huntsville, but, in December 1992, his employment was terminated.

Petitioner deducted the following amounts on Schedule A of his Federal income tax return for the taxable year 1990:

| Deduction | Amount |
| --- | --- |
| Medical and dental expenses | $225 |
| Gifts to charity | 400 |
| Casualty or theft loss | 800 |
| Moving expenses | 4,114 |
| Total | 5,539 |

Respondent determined that petitioner was entitled to no itemized deductions for 1990 since his tax computed using the standard deduction for 1990 was less than his tax computed using the proper amount of itemized deductions.

The casualty loss in the amount of $800 claimed by petitioner for 1990 was for damage to a 1979 Ford Pinto automobile (the automobile).  Sometime around the end of 1989, petitioner took the automobile to Mayhall Texaco in Huntsville, Alabama, for repair of a transmission problem.  In March 1990, it was discovered that the automobile's engine had cracked due to an insufficient amount of antifreeze in the automobile.

On his Federal income tax return for the taxable year 1991, petitioner deducted on Schedule A the following items in the amounts shown:

| Deduction | | Amount |
|---|---|---|
| Real estate taxes | | $178 |
| Other taxes | | 321 |
| Home mortgage interest | | 3,600 |
| Points | | 285 |
| Gifts to charity | | 400 |
| Moving expenses | | 2,856 |
| Miscellaneous itemized deductions: | | |
|     Unreimbursed employee expenses | 11,116 | |
|     Legal fees to collect taxable income | 5,000 | |
|     Repayment under claim of right | 14,714 | |
|     Total | 30,830 | |
|     Less 2 percent floor | (1,223) | |
| | | 29,607.73(sic) |
| Total | | 37,247.73 |

Respondent in the notice of deficiency disallowed $33,164.73 of these claimed deductions.  The following itemized deductions for 1991 were not disallowed by respondent:

| Deduction | Amount |
|---|---|
| Real estate taxes | $178 |
| Personal property taxes | 20 |
| Home mortgage interest | 3,600 |
| Points | 285 |
| Total | 4,083 |

Included in the deduction claimed by petitioner for other taxes for the taxable year 1991 was a deduction for personal property taxes. The $20 allowed by respondent as a deduction for personal property taxes was for petitioner's car registration.

The $11,116 deduction claimed by petitioner in 1991 as employee business expenses was in connection with petitioner's employment by Avionics. Avionics contracted out petitioner's work to Northrup Grumman in Melbourne, Florida (Northrup Grumman). Petitioner received reimbursement from Northrup Grumman for his employee business expenses related to a business trip to Los Angeles. The policy of Northrup Grumman was to reimburse persons doing contract labor for any business travel expenses they incurred. To the extent petitioner was not reimbursed for his business travel expenses, it was because he did not follow the procedure required to receive reimbursement. Had he followed the required procedure, he would have received reimbursement.

Among the itemized deductions claimed by petitioner on Schedule A of his Federal income tax return for the taxable year 1991 was a deduction in the amount of $14,714 for "repayment

under a claim of right".  Petitioner's claimed deduction in 1991 of $14,714 for "repayment under a claim of right" related to litigation, which was resolved in 1991, over child support for petitioner's daughter.  In resolution of the litigation, petitioner claimed to have paid approximately $12,000 in child support, and the remaining $2,000 was claimed to have been paid for attorney's fees and expenses of litigation.

The $5,000 petitioner deducted in 1991 for "expenses/legal fees to collect taxable income" related to litigation instituted by petitioner regarding the denial to him of unemployment compensation by the State of Alabama.  Petitioner's claimed deduction is stated by petitioner to consist of legal fees, reporters' transcripts, depositions, court fees, Federal Express mailing, and administrative costs.  Petitioner was unsuccessful at all stages of the unemployment compensation litigation.

On Schedule A of his Federal income tax return for the taxable year 1992, petitioner claimed itemized deductions as follows:

| Deduction | Amount |
|---|---|
| State and local income taxes | $963 |
| Real estate taxes | 740 |
| Auto registration tax | 20 |
| Home mortgage interest | 4,070 |
| Gifts to charity | 500 |
| Casualty/theft loss | 350 |
| Moving expenses | 1,200 |
| Total | 7,843 |

Respondent in the notice of deficiency disallowed $3,464 of the itemized deductions claimed by petitioner for 1991. The itemized deductions claimed by petitioner for 1991 which were not disallowed were:

| Deduction | Amount |
|---|---|
| Real estate taxes | $277 |
| Personal property taxes | 20 |
| Charitable contributions | 12 |
| Home mortgage interest | 4,070 |
| Total | 4,379 |

Petitioner filed a Schedule C with his return for the taxable year 1991, using the business name "A & M Techservices". Petitioner reported the address of this business as "1431 S. Oak St. Room 16, Melbourne, FL 32901". On the Schedule C petitioner claimed business expense deductions as follows:

| Expense | Amount |
|---|---|
| Advertising | $6,150 |
| Insurance | 240 |
| Interest | 850 |
| Legal/professional services | 3,550 |
| Office expense | 7,000 |
| Equipment lease | 1,900 |
| Repairs and maintenance | 775 |
| Supplies | 200 |
| Travel | 1,500 |
| Meals and entertainment | 80 |
| Utilities | 300 |
| Business Start-up | 960 |
| Total | 23,505 |

Petitioner stated on the Form 2106 attached to his 1991 return that his business was engineering consulting. Petitioner was seeking to contract out his services as an independent

contractor during 1991. Petitioner did not contract out his services during the taxable year 1991. He reported no income on the Schedule C filed with his return for 1991.

Respondent in the notice of deficiency to petitioner disallowed the entire amount of the $23,505 business expense deduction claimed by petitioner on the Schedule C.

Petitioner filed a Schedule C with his return for the taxable year 1992, using the same business name as in 1991. During that year, petitioner listed on his tax return that his principal business was "personal and financial services/collection agency". Petitioner reported no income on the Schedule C for 1992, but he earned between $200 and $400 during the year 1992 from his collection business that he did not report on his tax return.[3]

On Schedule C of his Federal income tax return for the taxable year 1992, petitioner claimed business expense deductions totaling $7,250. Respondent in the notice of deficiency disallowed $4,592 of the business expense deductions claimed by petitioner for 1992. The claimed Schedule C business expense deductions not disallowed by respondent were:

---

[3] Petitioner testified to these facts but gave no explanation for his failure to report the income received.

| Expense | Amount |
|---|---|
| Advertising | $200 |
| Legal and professional services | 26 |
| Office expense | 560 |
| Rent | 1,650 |
| Repairs and maintenance | 126 |
| Supplies | 14 |
| Depreciation | 82 |
| Total | 2,658 |

On his Federal income tax returns for the taxable years 1990 and 1991, petitioner claimed a filing status of "head of household". He claimed a dependency exemption for his mother in the amount of $2,050 for the taxable year 1990, and in the amount of $2,150 for the taxable year 1991. In the notice of deficiency for the taxable years 1990 and 1991, respondent changed petitioner's filing status to "single" and disallowed the dependency exemption he claimed for his mother.

On his Federal income tax return for the taxable year 1992, petitioner claimed "single" filing status.

In her Answer to Amended Petition for the years 1990 and 1991, respondent alleged that petitioner's correct filing status for the taxable years 1990 and 1991 is "married filing separate", and also alleged that the exemption claimed by petitioner which was not disallowed should be reduced in accordance with section 151(d)(3), since the threshold amount for reduction of exemptions for married filing separate is less than for single. In her Answer for the year 1992, respondent alleged that petitioner's

correct filing status for the taxable year 1992 is "married filing separate".

## OPINION

Petitioner contends that he was head of a household during 1990 and 1991 when his mother lived in his house, and, therefore, is entitled to compute his tax on that basis. In the notice of deficiency, respondent determined that petitioner should have filed as "single". In her Answer to Amended Petition, respondent alleged that petitioner was required to file as "married filing separate".

As a general rule, married individuals must file their Federal income tax returns using either "married filing separate" or "married filing joint". Pursuant to section 2(b)(1), an unmarried individual may file a return as "head of household" if that individual: (1) Maintains as his home a household which constitutes for more than one-half of his taxable year the principal place of abode, as a member of such household of an unmarried son or daughter or stepson or stepdaughter or of any person who is a dependent of the taxpayer, if the taxpayer is entitled to a dependency exemption for that person; or (2) maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer, if the taxpayer is entitled to a dependency exemption for that parent.

Under section 7703,[4] certain married individuals living apart are considered to be unmarried for the purpose of determining their eligibility to file as "head of household" under section 2(c). Petitioner argues that he is entitled to "head of household" status due to the support he provided to his mother during 1990 and 1991. Petitioner testified at trial that he was married during 1990 and 1991. However, he argues that since his wife was declared incompetent by a State court during those years, he was entitled to "head of household" status for the care of his mother. Even if petitioner had offered

---

[4] SEC. 7703. DETERMINATION OF MARITAL STATUS.

* * * * * * *

(b) Certain Married Individuals Living Apart.--For purposes of those provisions of this title which refer to this subsection, if--

(1) an individual who is married (within the meaning of subsection (a)) and who files a separate return maintains as his home a household which constitutes for more than one-half of the taxable year the principal place of abode of a child * * * with respect to whom such individual is entitled to a deduction for the taxable year under section 151 (or would be so entitled but for paragraph (2) or (4) of section 152(e)),

(2) such individual furnishes over one-half of the cost of maintaining such household during the taxable year, and

(3) during the last 6 months of the taxable year, such individual's spouse is not a member of such household,

such individual shall not be considered as married.

sufficient evidence to establish his claim that his wife was incompetent in 1990 and 1991, he would not meet the requirements of section 7703 for persons who are married to file as head of household. One of the requirements of the statute is that a married taxpayer support either a son, stepson, daughter, or stepdaughter to file as head of household. Petitioner makes no claim that he supported a son or daughter, but claims that he was head of household because his mother was a member of his household. Since petitioner testified that he was married in 1990, 1991, and 1992, we hold that petitioner's correct filing status in each of these years is "married filing separate". It follows that in computing petitioner's income tax, the threshold amount of married filing separate should be used to determine the amount of any exemption to which petitioner is entitled. Petitioner argues that in any event he is entitled to a dependency exemption for his mother in 1990 and 1991.

Under section 151, a taxpayer is allowed an exemption for himself and an exemption for each dependent as defined in section 152: (1) Whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than the exemption amount; or (2) who is a child of the taxpayer and who has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or is a student. Sec. 152(b) and (c). Under section 152(a)(4), a "dependent" includes the father or mother of the taxpayer, if the father or mother

received from the taxpayer over half of his or her support for the calendar year in which the taxable year of the taxpayer begins.

Petitioner submitted checks made payable to AmSouth representing mortgage payments for the Karter Street house for the taxable year 1991 totaling $3,199.83, in support of the claimed dependency exemption for his mother.  According to petitioner's tax returns, his mother lived with him 7 months in 1990 and 8 months in 1991.  Petitioner's sister and her husband also lived in the Karter Street house during those years.  The record further indicates that petitioner's mother received Government assistance during 1990 and 1991, including supplemental Social Security income payments in October and November 1990 in the amount of $193 per month and in the amount of $289.50 per month thereafter.  Petitioner's father was also receiving supplemental Social Security income payments in October and November 1990 in the amount of $386 per month, and, beginning in December 1990, he received $289.50 per month.  The record does not show whether petitioner's sister and her husband provided support during 1990 and 1991 for petitioner's mother and father. It does show that both petitioner's mother and petitioner's sister lived in petitioner's house during part of each of the years 1990 and 1991.  The mortgage documents are the only documents petitioner has provided to establish any expenditures relating to the support of his mother.  These checks merely

establish that petitioner made mortgage payments and do not prove that petitioner provided over half the support for his mother during the years 1990 and 1991. The mortgage documents fail to satisfy petitioner's burden of proving that his mother was his dependent during the years 1990 and 1991. We sustain respondent's disallowance of petitioner's claimed dependency exemption for his mother in both 1990 and 1991.

The only documents offered by petitioner for the taxable year 1990 in support of his claimed Schedule A itemized deductions relate to his claimed casualty loss and his claimed moving expense deductions. As evidence of his claimed casualty loss, petitioner has submitted an affidavit. As evidence of his claimed moving expenses, petitioner has submitted 2 car rental agreements and a hotel receipt.[5]

Section 165(h) provides limits set forth therein for the deduction of personal casualty losses. Under section 1.165-7(b)(1), Income Tax Regs., the amount of loss to be taken into account shall be the lesser of: (1) The amount that is equal to

---

[5] At the conclusion of the trial, the Court requested that respondent construct a list of each item which petitioner introduced into evidence in this case and state whether respondent agreed that the item represented an allowable deduction and whether that item corresponded to petitioner's Schedule A or C claimed deductions for that particular year. The Court also instructed petitioner to list the exhibits in the record and indicate specifically what each item is alleged to prove. While respondent followed the Court's instructions in this regard, petitioner has failed to assist the Court in this matter.

the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or (2) the amount of the adjusted basis for determining the loss from the sale or other disposition of the property involved. A "casualty" is an event due to some sudden, unexpected, or unusual cause, such as a fire, storm, or shipwreck. Durden v. Commissioner, 3 T.C. 1, 3 (1944).

The only evidence petitioner offered regarding the casualty loss deduction claimed in 1990 was an affidavit of Tex Mayhall, in which Mr. Mayhall states that the damage to petitioner's automobile occurred due to an absence or an insufficient amount of antifreeze in the automobile. The affidavit further states that Mr. Mayhall salvaged the automobile for $50 and notified petitioner about the salvage approximately 3 months later when petitioner called to ask about the automobile. We have long held that in order for an event to constitute a casualty, the event must involve the application of a destructive force which must be the proximate cause of the loss. See White v. Commissioner, 48 T.C. 430 (1967). Petitioner's loss, if any, did not embody the requisite element of "chance, accident, or contingency", see Powers v. Commissioner, 36 T.C. 1191, 1193 (1961) (quoting Bachofen von Echt v. Commissioner, 21 B.T.A. 702, 709 (1930)), and is, therefore, no more than a personal expense to petitioner as a result of petitioner's neglect. Further, even if this were to be considered as a casualty loss, petitioner has offered no

evidence whatsoever of the amount of the loss.  We, therefore, sustain respondent's denial of a deduction for petitioner's claimed casualty loss in 1990.

In general, a taxpayer is allowed to deduct moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or self-employed individual at a new principal place of work.  Sec. 217(a).  On his tax return for the taxable year 1990, petitioner deducted $4,114 for moving expenses.  To substantiate this deduction, petitioner placed in evidence a car rental receipt in the amount of $92.06 and a motel receipt from a motel in Huntsville, Alabama, in the amount of $30.74.  Respondent concedes that petitioner is entitled to these amounts as a moving expense deduction for 1990.  Respondent further concedes that petitioner is entitled to include as a moving expense deduction in 1990 the amount of $64.54 based on another car rental receipt. Petitioner argues in his brief that he produced to respondent's agent receipts for all expenses "he would have reasonably [been] expected to produce".  However, petitioner offered only the two receipts at trial and no other information regarding the moving expenses.  Although the evidence indicates that petitioner did have some moving expenses in 1990, in addition to those conceded by respondent, there is no basis for concluding that the amount of such expenses would cause petitioner's itemized deductions for 1990 to result in his tax computed on the basis of such

deductions being less than the tax computed on the basis of the standard deduction.

Petitioner has conceded that he is not entitled to a medical expense deduction for 1990, but petitioner has not conceded that he is not entitled to the deduction he claimed for a charitable contribution in the amount of $400. Petitioner has offered no evidence of any charitable contribution made in 1990, and, therefore, we sustain the denial of the deduction of $400 claimed by petitioner for a charitable contribution in 1990.

Petitioner also deducted various expenses on his Schedule A for the taxable year 1991 that respondent disallowed.[6] Petitioner presented at trial a variety of unorganized checks, receipts, invoices, and car rental agreements in support of these claimed deductions.

Petitioner claimed that the unreimbursed employee business expenses in the amount of $11,116 claimed on Schedule A of his 1991 tax return consisted of vehicle expenses, parking fees, travel expenses, meals and entertainment expenses, and other business expenses. Most of these claimed expense deductions are of the type specified in section 274(d) which provides that no deduction is allowed unless the taxpayer can substantiate by adequate records or sufficient evidence the amount of the

---

[6] Among the items that respondent has allowed is the deduction of $3,600 for home mortgage interest and $285 for points petitioner deducted on Schedule A of his 1991 tax return.

expenditure, the time and place of the expenditure, the business purpose of the expense, and the business relationship involved.

Petitioner introduced in evidence documents that he contends show unreimbursed employee business expenses. Petitioner testified that had he applied for reimbursement of these expenses, his employer would have reimbursed him for the expenditures. Not only has petitioner failed to meet his burden of substantiating these claimed expense deductions by proper evidence, he has failed to show that they would be deductible even if substantiated. These expenditures, if for business purposes, would have been reimbursed by his employer had he claimed reimbursement. See Lucas v. Commissioner, 79 T.C. 1, 6-7 (1982); Fountain v. Commissioner, 59 T.C. 696, 708 (1973). Petitioner testified that some of these expenses which he claimed as deductible may have actually been reimbursed by his employer, and that some were nondeductible personal expenditures. Based on this record, petitioner has failed to show that he is entitled to a deduction for unreimbursed employee business expenses in 1991 in any amount. We, therefore, sustain respondent's disallowance of petitioner's claimed deduction in 1991 of unreimbursed employee business expenses.

Petitioner claimed a deduction for "repayment under claim of right" in the amount of $14,714. Petitioner testified that this amount related to litigation involving child support for his daughter, and argued in his brief that this amount was "arrearage

on child support he paid the state of TN and child's mother Dorine Furuya, neither of which would provide petr. with accounting of monies rec'd. despite several written requests from the petr". Petitioner testified that approximately $12,000 of this claimed deduction was for child support payments, and approximately $2,000 was for attorney's fees and expenses of the litigation concerning child support payments. The portion of this claimed deduction that relates to child support payments is not deductible. Secs. 71(c), 215(b). The portion of this claimed deduction that relates to the litigation costs concerning child support payments is not deductible since it is a personal, living, or family expense which is not deductible under section 262. United States v. Gilmore, 372 U.S. 39 (1963). Furthermore, petitioner has failed to prove that the amounts he claimed as deductions were expenditures he actually made in 1991. We hold that petitioner is not entitled to deduct the amount he claims to be deductible as a "repayment under claim of right".

Petitioner deducted $5,000 in legal fees for the year 1991 that he testified related to his unsuccessful attempt to obtain unemployment compensation through litigation. Section 212 allows, in the case of individual taxpayers, a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income. Respondent does not argue that legal fees to collect unemployment compensation are not deductible if paid. See United States. v.

Gilmore, supra; Caruso v. United States, 236 F. Supp. 88 (D.N.J. 1964). Respondent, however, argues that petitioner has not substantiated the entire amount of the claimed deduction.

Petitioner introduced into evidence 24 checks that he claimed represent legal fees and expenses relating to unemployment compensation litigation. Respondent concedes that 20 of the checks represent deductible amounts totaling $4,396.75. One of the remaining checks received in evidence is in the amount of $300 payable to "Richard Stegman Esq." for "consultation", and two of such checks are payable to "Neil Paulson" in the total amount of $830. Petitioner offered no evidence that either Mr. Stegman or Mr. Paulson worked on the unemployment compensation litigation, and neither person appeared on any court documents relating to this litigation. The fourth check received in evidence is a check in the amount of $15 payable to Accurate Professional Typists. Petitioner could not remember whether this check was related to the unemployment compensation litigation. There were also received in evidence two airline passenger receipts that petitioner claims relate to the unemployment compensation litigation. The travel represented by the airline receipts was to Huntsville, Alabama, and occurred over weekends and holidays. There is a strong indication from these facts that the travel was for personal purposes. Petitioner claims that car rental agreements received in evidence represent expenses related to the unemployment compensation litigation. Petitioner has not

explained how the amounts paid under the car rental agreements relate to the unemployment compensation litigation. We, therefore, hold that petitioner has failed to establish that he had any deductible expenses relating to the unemployment compensation litigation other than the $4,396.75 conceded by respondent.

In support of a claimed deduction for 1991 for taxes on his car registration, petitioner submitted a copy of a canceled check payable to Emmett Sanders in the amount of $32.37. In the notice of deficiency, respondent did not disallow $20 of the deduction claimed by petitioner for taxes on his car registration. Petitioner has failed to show that the entire amount of the check to Emmett Sanders was for taxes on his car registration. We therefore uphold respondent's determination with respect to the disallowance of a portion of the amount claimed by petitioner as taxes on his car registration in 1991. The other taxes deducted by petitioner in 1991 are utility taxes and tax on petitioner's telephone bill. These items are nondeductible, and we sustain respondent's disallowance of these claimed deductions. Sec. 164; see Fife v. Commissioner, 73 T.C. 621 (1980).

Petitioner has offered no evidence to substantiate the charitable contribution deduction claimed on Schedule A of his 1991 tax return. Since petitioner has not substantiated this claimed deduction, we sustain respondent's disallowance of the claimed deduction.

Petitioner deducted $2,856 in moving expenses in 1991 which respondent disallowed in her notice of deficiency. Petitioner testified that he moved from Huntsville, Alabama, to Melbourne, Florida, in November 1990. Petitioner testified that he incurred expenses in connection with his move from Huntsville to Melbourne through June 1991. While in Melbourne, he worked for Avionics until October 1991. Petitioner then remained in Melbourne to receive unemployment benefits. Petitioner has offered no evidence that the expenses of his move to Melbourne in 1990 continued through 1991, nor has he offered any substantiation of this claimed deduction. We therefore sustain respondent's disallowance of this claimed deduction for moving expenses in 1991.

Respondent disallowed all of the amounts claimed as deductions by petitioner on Schedule A for 1992 for lack of substantiation. The following are Schedule A claimed deductions in dispute for the year 1992:

| Deduction | Amount |
| --- | --- |
| State and local income taxes | $963 |
| Real estate taxes | 463 |
| Charitable contributions | 488 |
| Casualty/theft loss | 350 |
| Moving expenses | 1,200 |

Petitioner has failed to provide any substantiation whatsoever for these claimed deductions, and, accordingly, we

sustain respondent's disallowance of the claimed deductions for 1992.

For the years 1991 and 1992 petitioner claimed to have incurred business expenses relating to "A & M Techservices".  He claimed these deductions on Schedule C.  Respondent denied all of these claimed business deductions for 1991 on the basis that petitioner had not established that he was carrying on a trade or business to which the expenses related.

Section 162(a) provides that there is allowed as a deduction all ordinary and necessary business expenses incurred during the taxable year.  Generally, a trade or business is an activity that is pursued in good faith, with continuity and regularity, and for the production of income.  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  Whether a taxpayer is engaged in a trade or business is a question of fact.  Walliser v. Commissioner, 72 T.C. 433, 437 (1979).

Petitioner reported on his tax return for 1991 that the name of his business was "A & M Techservices".  At trial, petitioner claimed he was an engineering consultant, seeking to contract out his services as an independent contractor.  He reported no gross income in 1991 from this business, but claimed deductible expenses totaling $23,505.  Petitioner has placed in evidence numerous canceled checks and other documentation in purported support of these claimed deductions.  These checks relate to rent payments, utility and phone bills, mailboxes, credit card

payments, airline tickets, and automobile expenses. Petitioner has not shown that the expenses for which these checks were given relate to a business rather than being personal expenses.

Petitioner has offered no evidence other than his vague testimony that he was engaged in a trade or business other than his full-time job with Avionics during the year 1991. Petitioner reported no income in 1991 from any business other than his employment by Avionics. The nature of the expenses petitioner claimed as deductible in 1991 strongly suggests that they were nondeductible personal household expenses. Petitioner deducted power, phone, and rent for an apartment address, which he claims was his business address, at 1431 South Oak Street, Room 16. This same address appeared on the Forms W-2 issued by Avionics to petitioner for the years 1990 and 1991. This is also the address that petitioner used on his checking account. Petitioner also used this address on the automobile repair invoices and on all of the car rental agreements that are in evidence. Petitioner further admitted that the South Oak Street apartment is a residential apartment. At trial, when petitioner was asked where his residential address was during that year, he was vague and unspecific, claiming that at the time he lived in another person's house. He had difficulty remembering the name of the person, the street address, or the telephone number, but could immediately recall the address that he claimed was the address for his claimed business. We conclude that petitioner

has not met his burden of proving that he was engaged in a bona fide business during 1991 other than his employment and sustain respondent's disallowance of petitioner's claimed business expenses relating to A & M Techservices.

Respondent allowed some of the Schedule C business expense deductions claimed by petitioner relating to A & M Techservices for the year 1992. According to petitioner, this business was a "personal & financial services/collection agency". At trial, petitioner failed to offer proof of any amount of deductions in excess of those allowed by respondent. Accordingly, we sustain respondent's determinations with regard to petitioner's claimed Schedule C deductible expenses for the year 1992.

Section 6662(a) imposes an accuracy-related penalty of 20 percent on any portion of an underpayment of tax that is attributable to items set forth in section 6662(b). Respondent contends that petitioner is liable for this penalty for either negligence or substantial understatement of tax under section 6662(b)(1) and (2).

Negligence includes any careless, reckless, or intentional disregard of rules or regulations, any failure to make a reasonable attempt to comply with the provisions of the law, and any failure to exercise ordinary and reasonable care in the preparation of a tax return. See Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982).

Section 6664(c)(1) provides that the penalty should not be imposed on any portion of an underpayment if the taxpayer shows reasonable cause for such portion of the underpayment and that the taxpayer acted in good faith with respect to such portion. Reliance on the advice of a professional such as an accountant may constitute a showing of reasonable cause if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. Sec. 1.6661-6(b), Income Tax Regs.

Petitioner has failed to show that he was not negligent. There is no evidence that petitioner made a reasonable attempt to comply with the statutes or regulations in filing his Federal income tax returns for any of the years at issue. Had petitioner consulted either the relevant statutes or a competent tax adviser he would have discovered that many of the deductions he claimed were not proper. It is clear from the facts in this case, and from petitioner's brief, that petitioner claimed these deductions and expenses without regard to the applicable law. Therefore, we sustain the accuracy-related penalty for each year as determined by respondent.

Decisions will be

entered under Rule 155.